DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
IN RE:                          )
                                )
JEFFREY J. PROSSER,             )        Chapter 7
                                )        Case No. 06-30009 (JFK)
            Debtor.             )
_____)
                                )
NORTH SHORE REAL ESTATE         )
CORPORATION,                    )
                                )
            Appellant,          )
                                )
            v.                  )        Civil No. 2010-70
                                )
JAMES P. CARROLL, CHAPTER 7     )
TRUSTEE,                        )
                                )
            Appellee.           )
_____)
```

ATTORNEYS:

**Jeffrey B. C. Moorhead, Esq.**
Jeffrey B. C. Moorhead, P.C.
St. Croix, U.S.V.I.
    *For North Shore Real Estate Corp.*

**Christopher A. Kroblin, Esq.**
Erika Kellerhals, P.C.
St. Thomas, U.S.V.I.
    *For North Shore Real Estate Corp.*

**Bernard C. Pattie, Esq.**
Law Offices of Barnard Pattie, P.C.
St. Croix, U.S.V.I.
    *For James P. Carroll.*

**Fred Stevens, Esq.**
Fox Rothschild LP
New York, NY
    *For James P. Carroll.*

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 2

**<u>MEMORANDUM OPINION</u>**

**GÓMEZ, C.J.**

Before the Court is the motion by James P. Carroll to dismiss this appeal for lack of prosecution.

**<u>I. FACTUAL AND PROCEDURAL BACKGROUND</u>**

On June 30, 2010, North Shore Real Estate Corporation ("North Shore") filed a notice of appeal from the May 26, 2010, judgment of the United States Bankruptcy Court for the District of the Virgin Islands (the "Bankruptcy Division"), and the June 9, 2010, order of the Bankruptcy Division denying North Shore's motion for reconsideration. On July 9, 2010, the Court entered an Order stating that:

> Appellant shall, not later than 10 days after the date of this Order, file and serve on the other parties the designation of record and statement of the issues to be presented, failing which the Appeal may be dismissed for failure to prosecute . . . .
> . . .
> Appellant's brief shall be filed and served within 30 days of the date of this Order, or if the designated record includes a transcript, within 15 days after the transcript is filed, whichever comes later . . . .

(Order 1-2, July 9, 2010, ECF No. 2).

North Shore did not file a designation of record nor a statement of the issues within the time provided in the July 9, 2010, order. North Shore did not file its brief within the time provided in the order.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 3

On March 9, 2011, North Shore filed a motion for leave to file an untimely designation of record, statement of issues, and brief. North Shore attached to its motion a designation of record and statement of issues. North Shore did not attach a brief.

Subsequently, James P. Carroll, Chapter 7 Trustee ("Carroll"), filed a motion to dismiss this matter for lack of prosecution. North Shore did not file an opposition.

On March 28, 2012, this Court entered an order stating that:

> ... North Shore shall, not later than April 2, 2012, file and serve on James P. Carroll the designation of record and a statement of issues to be presented, failing which this appeal may be dismissed for failure to prosecute...

> ... North Shore's brief shall, not later than April 10, 2012, be filed and served on James P. Carroll, failing which this appeal may be dismissed for failure to prosecute...

(March 28, 2012, Order 3-4, ECF No. 8).

The Court found as moot the motions filed by North Shore and Carroll.

North Shore did not file a designation of record nor a statement of the issues within the time provided in the March 28, 2012, order. North Shore did not file its brief within the time provided in the order.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 4

Carroll now moves again for dismissal of this appeal for lack of prosecution. North Shore has not filed an opposition.

## II. DISCUSSION

"Under Rule 8001(a)[1] of the Federal Rules of Bankruptcy Procedure, the District Court is empowered to dismiss an appeal for failure to prosecute or otherwise follow the procedures set out in the Bankruptcy Rules." *In re Richardson Industrial Contractors, Inc.*, 189 Fed. Appx. 93, at *96 (3d Cir. 2006). Before such a dismissal occurs, however, a district court must consider six factors outlined in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) [hereinafter *Poulis*]. In *Poulis*, the Third Circuit stated that a district court must balance the following factors:

> 1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

---

[1] "An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel ... shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002. An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal...." Fed. R. Bankr. P. 8001(a) (2011).

*Id.* (explaining that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff")(alteration in original); *see also In re E Toys Inc.,* 263 Fed. Appx. 235, 237, 2008 WL 241367 at *2 (3d Cir. Jan. 30, 2008) (affirming the district court's dismissal of a bankruptcy appeal for failure to prosecute upon consideration of the *Poulis* factors).

"Not all of the[] *Poulis* factors need be met for a district court to find dismissal is warranted." *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988). However, courts must consider and balance all six *Poulis* factors before dismissing a case with prejudice, and all doubts must be resolved in favor of an adjudication on the merits. *See $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 161 (3d Cir. 2003) ("[W]e have always required consideration and balancing of all six of the factors, and have recommended the resolution of any doubts in favor of adjudication on the merits."); *see also Bjorgung*, 197 Fed. Appx. at 125-26 ("Although '[n]ot all of the Poulis factors need be satisfied in order to dismiss a complaint' they must all be considered") (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 6

## III. ANALYSIS

In *In re Richardson Industrial Contractors, Inc.*, 189 Fed. Appx. 93 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit addressed the relevant factors that a district court must consider before dismissing a bankruptcy appeal for failure to prosecute. In that case, the district court dismissed a creditor's appeal with prejudice for failure to comply with the mandates of the Federal Rules of Bankruptcy Procedure. In so doing, the district court considered only two of the six *Poulis* factors: the creditor's bad faith in requesting a second extension of time in which to file his brief and the ineffectiveness of alternative sanctions. The creditor appealed the district court's decision.

On appeal, the Third Circuit found that, in addition to not considering all six *Poulis* factors, the district court's discussion of two factors was limited and did not set out the basis for its conclusions in such a way to permit meaningful review of its decision.

In reviewing similar cases in other circuits, the *Richardson* court noted that "'[d]ismissal typically occurs in cases showing consistently dilatory conduct or the complete failure to take any steps other than the mere filing of a notice of appeal.'" *Richardson*, 189 Fed. Appx. 93, at *97 (quoting *In*

*re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir. 1985))**;** *see
also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)
(upholding dismissal of bankruptcy appeal for failure to follow
Bankruptcy Rules or timely file appeal brief where plaintiffs
provided no explanation or excuse for noncompliance); *In re
Champion*, 895 F.2d 490, 492 (8th Cir. 1990) (finding no abuse of
discretion in dismissing appeal where appellant had not filed
designation of record or statement of issues required by
Bankruptcy Rule 8006); *In re Tampa Chain Co.*, 835 F.2d 54, 56
(2d Cir. 1987) (affirming dismissal of bankruptcy appeal for
failure to file a brief for seven months after the due date or
provide any explanation for the failure, even after the court's
inquiry into delinquency).

Given that backdrop, the Court will now assess whether the
*Poulis* factors favor or disfavor dismissal.

**1. Extent of North Shore's Personal Responsibility**

The first *Poulis* factor assesses the extent of the
appellant's personal responsibility. 747 F.2d at 868. North
Shore has suggested that its counsel is responsible for its
failure to follow the Court's scheduling order. North Shore
averred that,

> Defendant, Chapter 7 Debtor Jeffrey J. Prosser (Case
> No. 06-30009), and his family, including Dawn Prosser,
> the owner of North Shore, are overwrought and under

> assault with numerous and often duplicate suits
> replete with continuous motions and actions...

(Appellant's Mem. Supp. Mot. Leave to File Untimely Resp. 2, ECF No. 4). North Shore also contended that it is "without the financial resources to employ an adequate number of counsel that have the time availability to meet the relentless and continuous assault and actions..." *Id*. North Shore went on to aver that it has "mounted a defense with far too small group [sic] of counsel and others which have committed what time they can and what effort they can, when possible, for little, or in most cases, for no compensation." *Id*.

Indeed, North Shore referred generally to the commotion of the bankruptcy proceedings in explaining its failure to comply with the original scheduling order in this matter. North Shore also pointed to the limited size of its legal team and financial resources. Because it seems that North Shore's counsel was at least somewhat responsible for North Shore's failure to comply with the Court's original scheduling order, the first *Poulis* factor does not necessarily weigh in favor of dismissal.

However, North Shore's "lack of responsibility for [its] counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." *See Poulis*, 747 F.2d at 868; *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)("[E]ven

assuming that WCI does not bear responsibility for its counsel's conduct, consideration of the remaining factors still compels affirming the District Court's decision to sanction WCI and dismiss the breach of contract claim."); *cf*. *Lee v. Sunrise Senior Living*, 2011 U.S. App. LEXIS 25662, *5 (3d Cir. Nov. 9, 2011)(finding that the pro se plaintiff was "fully responsible for her conduct.") The Court also notes that North Shore has not offered any explanation for its failure to comply with the March 28, 2012, scheduling order.

## 2. Prejudice to Carroll

The second *Poulis* factor considers prejudice to the appellee caused by the appellant's failure to meet scheduling orders and respond to discovery. 747 F.2d at 868. Prejudice for the purpose of the *Poulis* factors "does not mean 'irremediable harm.'" *See Ware*, 322 F.3d at 222; *see also Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988) (rejecting the argument that "the district court should not have dismissed its claim . . . unless the harm to the other parties amounted to 'irremediable prejudice'"). Rather, the burden imposed by impeding the opposing party's ability to prepare a meaningful litigation strategy has been held to be sufficiently prejudicial. *See Ware,* 322 F.3d at 222.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 10

Carroll argues that he has "incurred costs and fees of bringing the underlying adversary proceeding and opposing North Shore's late filings." (Carroll's Opp'n Mot. Leave to File Untimely Resp. 5, ECF No. 5). Carroll also argues that he "should not be made to incur the additional costs to oppose an appeal that North Shore failed to address for several months, particularly when North Shore's current default merely continues its dilatory performance in the underlying bankruptcy proceeding." *Id*.

Additional costs and fees do not necessarily amount to prejudice. However, it is clear that North Shore's conduct has prejudiced Carroll by hampering his ability to resolve the underlying bankruptcy matter. *See Lee*, 2011 U.S. App. LEXIS 25662, at *5 (finding that the plaintiff's conduct prejudiced the defendants by "impeding their efforts to resolve [the] case, causing them to file unnecessary motions, and requiring them to incur extra expenses.") The Court also notes that the Bankruptcy Division has stayed execution as to the bank account involved in the underlying matter, pending resolution of this appeal. Consequently, North Shore's lengthy delay has had an impact on the Bankruptcy Division's proceedings. Thus, the Court finds that the second *Poulis* factor weighs in favor of dismissal.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 11

### 3. History of Dilatoriness

The third *Poulis* factor considers the appellant's history of dilatoriness. 747 F.2d at 868. North Shore did not file its brief within the original time period set by the Court. North Shore also failed to move for an extension of time within which to file its brief until more than six months *after* the Court's deadline. Additionally, North Shore did not file its brief within the extended time period set by the Court. Indeed, rather than trying to make up for lost time in the more than seven months since its brief was *originally* due, North Shore has elected not to file even a brief in compliance with the Court's extended time period. Similarly, North Shore did not file oppositions to Carroll's motions to dismiss this appeal.

The Court also notes the history leading up to this appeal. As the Bankruptcy Court noted in its May 26, 2010, judgment,

> As established by the record of the entire
> Adversary and the docket, North Shore has set upon a
> pattern and practice of filing pleadings after the
> deadlines have passed: (1) North Shore's initial
> opposition to the first Motion for Summary Judgment
> was due on November 2, 2008, but was actually filed on
> November 30, 2009, more than a year after the due
> date. (2) North Shore obtained leave of court to file
> a late opposition to Trustee's motion for entry of
> default and default judgment, having missed that
> deadline. (3) North Shore filed a late response
> to the renewed Motion for Summary Judgment,
> without seeking leave of court. (4) North Shore has
> never complied with the discovery deadlines. North
> Shore apparently views court-imposed deadlines as

suggestions rather than as Orders compelling timely performance.

(May 26, 2010, Bankr. Summ. J. 7, ECF No. 1, Ex. 3).

North Shore has a sufficient history of dilatoriness in this matter such that the third *Poulis* factor weighs in favor of dismissal. *See, e.g., Buccolo*, 308 Fed. Appx. 574, at *575 (affirming district court's dismissal of the bankruptcy appeal for failure to prosecute where appellant "did not comply with the Bankruptcy Rules for filing a brief within 15 days of the docketing of his appeal... or for providing for the transcript of the Bankruptcy Court proceedings..." noting that "[e]ither of these violations is grounds for dismissal under Bankruptcy Rule 8001").

### 4. Willfulness and Bad Faith

The fourth *Poulis* factor considers whether the conduct of the appellant or of the appellant's attorney was willful or in bad faith. 747 F.2d at 868. North Shore failed to comply with the Court's original scheduling order, failed to move for an extension of time within which to file its brief until more than six months after the original filing deadline, and has failed to comply with the Court's new scheduling order. In explaining its failure to follow the Court's original scheduling order, North Shore referred generally to the hustle and bustle of the

bankruptcy proceedings. North Shore also pointed to the size of
its legal team and financial resources.

North Shore's explanations for its delays are unpersuasive.
By failing to file an appellant's brief or timely move for an
extension of time within which to do so, North Shore has
demonstrated a willful disregard for the Court's scheduling
orders and for the appellate process in general. *See, e.g., In
re Toys Inc.,* 263 Fed. Appx. at 238 (finding that "the record
provides a basis to conclude that [the appellant's] conduct
showed willful disregard for the appellate process" because
"[h]e ignored the deadlines issued by the District Court"). The
fourth *Poulis* factor therefore weighs in favor of dismissal.

### 5. Effectiveness of Alternative Sanctions

The fifth *Poulis* factor assesses the effectiveness of
sanctions other than dismissal. 747 F.2d at 868. North Shore has
not suggested any such sanctions. A possible alternative to
dismissal would be to grant North Shore an extension of time
within which to file its appellant's brief. However, the Court
has already granted such an extension. Granting any further
extension would reward North Shore's blatant failure to comply
with this Court's orders by allowing it to file an opening brief
more than 22 months after the commencement of its appeal.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 14

The Court could also impose a fine against North Shore's counsel as a penalty for its failure to comply with the scheduling orders in this matter. *See Poulis*, 747 F.2d at 869. Alternatively, the Court could consider the propriety of ordering North Shore to pay Carroll's attorney's fees associated with filing the instant motion. *See id*. However, North Shore has made it clear that its financial resources available to prosecute this matter are very limited. Thus, it is unlikely that North Shore will have the ability to comply with a sanctions order. Additionally, the ineffectiveness of the Court's prior orders setting deadlines for North Shore to file its appellant's brief, as well as North Shore's failure to respond to Carroll's motions to dismiss gives the Court reason to doubt the effectiveness of such sanctions.

North Shore has demonstrated little urgency in litigating its appeal. In addition to not filing a timely brief, it has elected not to file an opposition to Carroll's motions to dismiss. As such, the Court doubts the effectiveness of alternative sanctions. *Cf. Richardson*, 189 Fed. Appx. 93, at *98 (finding dismissal inappropriate where appellant requested two extensions and filed his brief prior to the District Court's order of dismissal). Based on North Shore's absence thus far it is not evident that alternative sanctions will prompt it to take

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 15

action in prosecuting this appeal. Thus, the ineffectiveness of alternative sanctions weighs in favor of dismissal.

### 6. Merit of North Shore's Appeal

The sixth *Poulis* factor considers the meritoriousness of the appellant's claim. 747 F.2d at 868. "Ordinarily, '[a] claim, or defense, will be deemed meritorious when the allegations of the [motion], if established [], would support recovery by plaintiff or would constitute a complete defense." *Buccolo*, 308 Fed. Appx. 574, at n.1 (quoting *Poulis*, 747 F.2d at 869-70). In this appeal, North Shore challenges the Bankruptcy Division's grant of summary judgment to Carroll in the amount of $115,140. North Shore also challenges the Bankruptcy Division's decision to deny its motion for reconsideration of the summary judgment.

*a. Summary Judgment*

In reviewing a determination of a bankruptcy court's grant of summary judgment, a reviewing court subjects the bankruptcy court's "legal determinations to plenary review, reviewing its factual findings for clear error, and considering its exercise of discretion for abuse thereof." *In re Atamian*, 300 Fed.Appx. 175, 176 (3d Cir. 2008)(citations omitted).

A bankruptcy court may grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (hereafter referred to as "Rule 56(c)"); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing that there is no genuine issue of material fact. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). Once the initial burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Id.* The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

In Carroll's motion for summary judgment he sought "a determination that $72,720 in prepetition transfers and $42,420 in postpetition [sic] transfers from Debtor to North Shore Real Estate Corporation were fraudulent transfers, preferences or otherwise avoidable pursuant to 11 U.S.C. §§ 544, 547, 548 and 549, and recoverable under § 550." (May 26, 2010, Bankr. Summ. J. Mem. Op. 1, ECF No. 1, Ex. 3)(citation omitted) Carroll asserted that "North Shore [] failed to respond to the Trustee's discovery requests, and … all of the Requests for Admissions were deemed admitted and, accordingly, there [were] no genuine issues of material fact and the Trustee [was] entitled to judgment as a matter of law." (Carroll Renewed Mot. Summ. J. ¶ 4, Bankr. Case No. 06-30009, Adv. Pro. No. 08-03048, ECF No. 30).

North Shore asserted in its opposition to Carroll's motion to dismiss that it indeed responded to Carroll's requests for admission. It explained that its response came in the form of the affidavit of Dawn Prosser, wife of the debtor in the underlying bankruptcy proceedings.

After reviewing the record, the bankruptcy court found that "North Shore [] failed to respond to or answer any of Trustee's discovery requests, including the … Requests for Admissions." (May 26, 2010, Bankr. Summ. J. Mem. Op. 2, ECF No. 1, Ex. 3). As

such, it determined that the requests for admissions were deemed

admitted.

Federal Rule of Bankruptcy Procedure 7036 provides that

Federal Rule of Civil Procedure 36 applies in adversary

bankruptcy proceedings. Rule 36 of the Federal Rules of Civil

Procedure, in pertinent part, provides

> (a)…
> (3) Time to Respond; Effect of Not Responding. A
> matter is admitted unless, within 30 days after being
> served, the party to whom the request is directed
> serves on the requesting party a written answer or
> objection addressed to the matter and signed by the
> party or its attorney….
>
> (4) Answer. If a matter is not admitted, the answer
> must specifically deny or state in detail why the
> answering party cannot truthfully admit or deny it. A
> denial must fairly respond to the substance of the
> matter; and when good faith requires that a party
> qualify an answer or deny only a part of a matter,
> the answer must specify the party admitted and
> qualify or deny the rest. The answering party may
> assert a lack of knowledge or information as a reason
> for failing to admit or deny only if the party states
> that it has made reasonable inquiry and that the
> information it knows or can readily obtain is in
> sufficient to enable it to admit or deny.

Fed. R. Civ. P. 36 (a)(3), (a)(4).

After reviewing Dawn Prosser's affidavit, the Court finds

that the numbered paragraphs in the affidavit do not correspond

to Carroll's numbered requests for admission. Looking at the

substance of the affidavit, the Court finds that the affidavit

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 19

does not address all of Carroll's requests for admission.[2] The

requests for admission which are not addressed are deemed

denied. *See* Fed. R. Civ. P. 36 (a)(3).

Furthermore, the requests for admission which are addressed

in the affidavit[3] are simply general denials, such as "I deny

that…" (See Dawn Prosser Aff. ¶¶ 2-12). The denials lack any

substance or explanation. Such general denials do not comply

with the requirements of Federal Rule of Civil Procedure 36. *See*

Fed. R. Civ. P. 36 (requiring specific denials which "fairly

respond to the substance of the matter.") As such, the generally

denied requests for admission are deemed admitted. *See id*.

The Third Circuit has long recognized that deemed admissions

"are sufficient to support orders of summary judgment." *Kelvin*

*Cryosystems Inc. v. Lightnin*, 252 Fed. Appx. 469, 472 (3d Cir.

2007)(citations omitted); *see also DIRECTV, Inc. v. Jarvis*, 262

Fed. Appx. 413, 416 (3d Cir. 2008) (affirming the district

court's entry of summary judgment based on the appellant's

failure to respond to requests for admission).

---

[2] The requests which are not addressed in Dawn Prosser's affidavit are numbers
2, 3, 4, 12, 14, 15, 17, 19, 20, 21, and 23.
[3] Dawn Prosser's affidavit is written so as to generally deny the information
in requests 1, 5, 6, 7, 8, 9, 10, 11, 13, 16, 18, and 22. (Dawn Prosser Aff.
¶¶ 2-12). There are no facts or evidence identified upon which the denials
are based.

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 20

To establish a claim for avoidance of a preferential transfer pursuant to 11 U.S.C. § 547, a party must establish that the transfer was:

1. to or for the benefit of a creditor;
2. for or on account of an antecedent debt owed by the debtor before such transfer was made;
3. made while the debtor was insolvent;
4. made – on or within 90 days before the date of the filing of the petition; …
5. that enables such creditor to receive more than such creditor would receive if –
   a. the case were a case under Chapter 7 of this title;
   b. the transfer had not been made; and
   c. such creditor received payment of such debt to the extent provided by the provisions of this title

11 U.S.C. § 547(b).

To establish a claim for avoidance of a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B), a party must show that within two (2) years of the petition date, the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and:

1. was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as result of such transfer or obligation;
2. was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
3. intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
4. made such transfer to or for the benefit of an insider, or incurred such obligation to or for the

> benefit of an insider, under an employment contract
> and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

To establish a claim for the avoidance of a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A), a party mush show that within two years of the petition date, the debtor made such transfer or incurred such obligation with intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

To establish a claim for the recovery of a post-petition transfer pursuant to 11 U.S.C. § 549, the appropriate inquiry is: (1) whether a transfer of property occurred; (2) whether the property transferred was property of the estate; (3) whether the transfer occurred after commencement of the bankruptcy case; and (4) whether the transfer was authorized by the Bankruptcy Code. 11 U.S.C. § 549.

Pursuant to 11 U.S.C. § 550, a trustee may recover transfers avoided under 11 U.S.C. §§ 544, 547, 548, and 549, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, form the initial transferee of such transfer or the entity for whose benefit such transfer was made.

Requests for admission numbered 1, 5, 6, 7, 8, 9, 10, 11, and 13, 16, 18, 22, and 23, correspond to the elements required to establish each of Carroll's claims. Each relevant request was deemed admitted. Thus, the bankruptcy court did not err in finding that there remained no genuine issue as to any material fact. As such, the burden was properly shifted to North Shore to show a genuine issue remaining for trial.

North Shore did not present any evidence in support of judgment in its favor. It merely pointed the court again to Dawn Prosser's affidavit. As previously discussed, the affidavit contains only general denials. Such general denials are not sufficient to satisfy North Shore's burden of proof. *See* Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.") Thus, the bankruptcy court did not err in finding that North Shore failed to meet its burden.

Based on a plenary review of the record, the Court finds that each of the elements required to establish Carroll's claims were satisfied by facts underlying North Shore's deemed admissions. As such, the bankruptcy court did not err in

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 23

concluding that Carroll was entitled to judgment as a matter of law.

    *b. Motion for Reconsideration*

    In denying North Shore's motion for reconsideration, the Bankruptcy Division found that North Shore pointed to no newly discovered evidence or any other basis for a grant of reconsideration.

    A bankruptcy court's denial of an appellant's motion for reconsideration is generally reviewed for abuse of discretion. *See generally Max's Seafood Café v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). "However, to the extent that the denial of reconsideration is predicated on an issue of law, such an award is reviewed de novo; to the extent that the [trial court's] disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error." *Id*.

    Local Rule of Civil Procedure 7.3 provides that:

>    A party may file a motion asking the court to reconsider its order or decision. . . . A motion to reconsider shall be based on:
>
>        1. Intervening change in controlling law;
>
>        2. Availability of new evidence, or;
>
>        3. The need to correct clear error or prevent manifest injustice

LRCi 7.3 (2008).

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such motions are not substitutes for appeals, and are not to be used as "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *Bostic v. AT&T of the V.I.*, 312 F.Supp. 2d 731, 733 (D.V.I. 2004).

In its motion for reconsideration, North Shore made two arguments. First, it argued that the bankruptcy court should reconsider because it improperly failed to consider Dawn Prosser's affidavit in deciding Carroll's motion for summary judgment. That argument is unsupported by the record. This Court has herein cited to numerous references in the bankruptcy court's memorandum opinion where it refers to and analyzes the substance of Dawn Prosser's affidavit. As such, the bankruptcy court did not err in refusing to reconsider on that basis.

Second, North Shore argued that the court should grant its motion because the underlying complaint contains "factually untrue" allegations. (North Shore Mot. Recons. 6-7, Adv. Pro. No. 08-03048, ECF No. 36). That argument ignores the numerous

opportunities which North Shore had to oppose Carroll's factual assertions.

Carroll served North Shore with various requests for discovery, including requests for admissions. North Shore failed to adequately respond to such requests. Thereafter, Carroll filed two motions for summary judgment. North Shore had the opportunity to file oppositions to each of those motions. Although North Shore was tardy in filing such oppositions, the bankruptcy court nonetheless considered them in its memorandum opinion. Finally, the bankruptcy court held a hearing on Carroll's second motion for summary judgment. North Shore had the opportunity to challenge any of Carroll's factual assertions and to submit any evidence in support of its challenges at that hearing. North Shore failed to submit sufficient evidence supporting its assertions at that time.

"A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *See Dunkley v. Mellon Investor Servs.*, No. 09-3609, 2010 WL 1767238, at *2 (3rd Cir. May 4, 2010)(internal citation omitted). Yet, that is precisely what North Shore has done. Indeed, the information that North Shore presents was available to it at the time when it filed its opposition to Carroll's motion for summary judgment. In an effort to relitigate this matter, North Shore now seeks to rehash

procedurally admitted factual issues. That effort is not supported by the law. *See id*. As such, the bankruptcy court did not err in refusing to reconsider on that basis.

Upon review of the Bankruptcy Division's summary judgment and order denying reconsideration, the Court finds that the likelihood that North Shore could successfully challenge the bankruptcy court's exercise of its broad discretion as to such matters is minimal. Thus, the final *Poulis* factor weighs in favor of dismissal. *Cf. Buccolo*, 308 Fed. Appx. 574, at n.1 ("[a] claim ... will be deemed meritorious when the allegations ... if established [], would support recovery by" the claimant) (internal citations omitted) (first alteration in the original).

### IV. CONCLUSION

Of the six *Poulis* factors, five weigh in favor of dismissal and one weighs against dismissal. The Court takes into account the possibility that North Shore's counsel bears some of the responsibility for its failure to follow the Court's scheduling order. Nonetheless, on balance, the *Poulis* factors demonstrate that dismissal of this appeal is an appropriate sanction for North Shore's failure to file its appellant's brief, or otherwise comply with this Court's scheduling orders. *See In re Buccolo*, 308 Fed. Appx. 574, 576 (3d Cir. 2009)(finding that "even if the consideration of the merits of [the appellant's]

*North Shore v. Carroll*
Civil No. 2010-70
Memorandum Opinion
Page 27

claim or defense does not tip the scales for or against

dismissal, it cannot be said that the District Court abused its

discretion in concluding that *on balance*, dismissal was

warranted.")(emphasis added); *In re E Toys Inc.,* 263 Fed. Appx.

235, 238 (3d Cir. 2008) (affirming the district court's ruling

that the *Poulis* factors favored dismissal of a bankruptcy appeal

as a sanction for the appellant's "repeated failures to adhere

to ordered briefing deadlines").

     For the reasons discussed above, the Court will grant

Carroll's motion to dismiss for failure to prosecute. An

appropriate order follows.


                              S_____
                                   **Curtis V. Gómez**
                                    **Chief Judge**